Filed 6/25/14  P. v. Valadez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063650 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD238722 ) |
| MICHAEL VALADEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Leo Valentine, Jr., Judge.  Affirmed.

Buckley & Buckley and Christian C. Buckley, by appointment of the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

Michael Valadez pleaded guilty to a charge of transporting methamphetamine and admitted an aggravated serious and violent felony strike prior from the State of New

Mexico.  In exchange, the district attorney dismissed other charges and allegations and agreed to a sentence of eight years in state prison.

Thereafter, Valadez filed a motion to withdraw his plea.  The court denied the motion and imposed the stipulated eight-year prison term.

Valadez appeals, asserting (1) the court erred in denying his motion to withdraw his guilty plea because it was not knowing, intelligent and free of overcoming influences; and (2) this matter must be remanded for an additional evidentiary hearing to receive expert testimony on the impacts of the various medications he was taking.  We affirm.

FACTUAL BACKGROUND

On the afternoon of January 16, 2012, Valadez was parked in a no-parking zone. The officer who contacted Valadez found a false soda can containing 10 individually packaged bindles of methamphetamine, as well as 14 tablets of oxycodone, two tablets of hydrocodone, and one tablet of alprazolam.  The quantity and packaging were consistent with sales.

Valadez told the officer he had just bought the car and the drugs belonged to the previous owner, who was "involved in narcotics sales."  However, a review of incoming and outgoing messages on his cell phone referenced orders for pills and methamphetamine, specifying large quantities.  Valadez claimed that he had a prescription for the pills "somewhere," but could not produce the prescription and refused to give the officer his address to allow the officer to investigate that claim.

2

DISCUSSION

## I. *DENIAL OF MOTION TO WITHDRAW GUILTY PLEA*

### A. *Proceedings Below*

#### 1. *Plea Colloquy*

At the plea hearing, the court greeted Valadez, who responded, "Good morning." as was appropriate for the time of day, 10:28 a.m. The court recited the charge and prior strike allegation to which Valadez was pleading, the stipulated prison term, and the People's agreement to dismiss the balance of the charges and allegations. The court then asked Valadez if he understood, and he answered, "Yes, Your Honor." When the court asked if he would swear to tell the truth, Valadez replied, "Yes, I do," and spelled his name for the record.

The court asked Valadez if any threats or promises had been made to induce him to plead guilty. He answered, "No, Your Honor." The court asked Valadez if he had had enough time to review the charges and any defenses with his attorney. He answered, "Yes, Your Honor." The court asked Valadez if he had any questions. He responded, "No, Your Honor."

The court informed Valadez of his various trial rights and asked if he understood them. Valadez answered, "Yes, Your Honor." The court warned him he was giving up those rights, except the right to representation, by pleading guilty and asked if he wanted to do that. Valadez answered, "Yes, Your Honor." The court detailed the various sentencing consequences of the plea and asked if he understood them. Valadez

3

responded, "Yes, Your Honor." The court then asked again, "Any questions about anything?" Valadez responded, "No, Your Honor."

The court read the charge as set forth in count four of the information and asked Valadez how he wanted to plead. He responded, "Guilty, Your Honor." The court read the allegation of the May 2004 strike prior conviction from New Mexico and asked Valadez whether it was true. Valadez answered, "Yes, Your Honor." His attorney concurred in the plea.

The court found that Valadez understood his rights and was "freely and voluntar[i]ly" pleading guilty. The court accepted the plea and dismissed all other charges and allegations as agreed by the parties.

2. *Motion to withdraw guilty plea*

On the date set for sentencing, the court relieved the public defender's office as Valadez's counsel after he informed the court that he had retained private counsel to file a motion to withdraw his guilty plea. Thereafter, Valadez filed the motion, asserting that on the day he pled guilty he was taking an "extremely large quantity of pain pills . . . [and] antidepressants" and was "so under the influence of these opiates" that he could not exercise "free will and clear judgment."

3. *The hearing on motion to withdraw guilty plea*

a. *Testimony of Valadez's counsel*

Deputy Public Defender Frank Barone, Valadez's appointed attorney at the time of his guilty plea, testified that he had advised over 500 clients regarding their guilty pleas. He explained that by virtue of his professional experience, as well as common sense and

4

"life experience," he was able to tell "when somebody is lucid and coherent and when they're not . . . ."

It was Barone's practice to evaluate the mental condition of each client before allowing them to sign a change of plea form. As a part of that, he would ensure that the client had no apparent symptoms of being under the influence of drugs or alcohol. Whenever he read the plea form to a client, he modified one section to read, "I am sober and my judgment is not impaired by any drugs, alcohol, or narcotics I may have consumed in the past 24 hours." If he did perceive that a client was under the influence of a drug, it was his practice to continue the hearing until the client was able to meaningfully participate.

Barone interacted with Valadez in person, by telephone and by videoconference at least 20 times before he pleaded guilty. On the day Valadez signed the plea form he seemed "fine" and appeared sober.

Barone was aware Valadez was taking pain medication. He was not concerned about that, however, because every time they spoke during his representation of Valadez there was never a problem with his comprehension of what was going on. He would never have allowed Valadez to plead guilty had he appeared to be under the influence of a controlled substance.

b. *Valadez's testimony*

Valadez testified that on the day he signed his guilty plea he was given opiate pain medications and he told Barone that he was "heavily medicated" and "wasn't sure [he] wanted to take this deal." He testified that Barone advised him that if he did not sign the

5

agreement that day, the offer would expire and he would go to trial and probably would be sentenced to a prison of 25 years to life. This made him feel "very pressured."

Valadez claimed he was "out of it" on the day he pleaded guilty. He was unable to understand the judge's questions. He remembered nothing about the plea colloquy except that he was "scared and confused." He claimed he answered falsely when he was asked whether he had any questions and whether he had had enough time to consult with his attorney.

Valadez asserted that he called Barone after pleading guilty and told him he "did not understand what [he] signed." He testified that Barone pointed out that given the evidence against him, such as the texts on his cell phone and a recording of his conversation with the police officer, as well as his multiple felony convictions that would be used against him if he were to testify, he likely would have been convicted and sentenced to life in prison.

c. *Court's ruling*

The court denied the motion. In doing so, the court noted that Valadez had been considering pleading guilty since at least May 2012 when he signed the plea form. The court remembered the plea colloquy well because he had been filling in for another judge that day. The court stated, "There was no impairment when I talked with Mr. Valadez." The court found not credible Valadez's claim that he remembered nothing of the plea colloquy.

The court also noted that he had been on the bench for 17 years and took seriously the duty of accepting a change of plea. The court further stated:

6

"[I]f I have any doubt [that the defendant is making an intelligent waiver], even over the attorney's objections, they believe their clients are making an intelligent waiver, I will shut it down and I will indicate for the record that I will not take this plea under the circumstances. That was not my sense of Mr. Valadez. Mr. Valadez had the presence of mind, communicated directly with the Court, made eye contact with the Court, and I took his plea."

The court found that Valadez was seeking to withdraw his guilty plea because he had "buyer's remorse," stating "[i]t's not because in the Court's mind that he did not know what he was doing."

The court nevertheless offered to review Valadez's medical records "to see if it changes the Court's opinion." The People objected to the court drawing conclusions about Valadez's level of awareness based on the medical records without expert testimony. Valadez requested permission to provide expert testimony at a later hearing. The court responded by noting that the matter had been continued several times, and that, to the extent that evidence would have been relevant, Valadez should have and could have presented it at the hearing. The court also noted that it had been prescribed the same medications as Valadez and "functioned very well on them." The court stated that it had "enough before [it] to make a decision that . . . is fair and just . . . ."

At a subsequent hearing regarding the medical records, the court noted that Valadez took medication on May 17, 2012 and July 31, 2012, and that on both days he had been given one dose of Percocet at about 5:00 a.m., which was five hours prior to the change-of-plea colloquy. The court found "nothing in the record to support that Mr. Valadez was [in] such a state of mind that he could not and did not understand the nature of the proceedings . . . ." The court reiterated that it presided over the change of plea and

7

that it "specifically" recalled the circumstances of that hearing and it found no legal basis to permit withdrawal of the guilty plea. The court remarked that Valadez had "probably done the best [he could] under the circumstances" given he was facing a life sentence, but negotiated eight years instead.

B. *Analysis*

Courts may permit withdrawal of a guilty plea upon a showing of good cause. (Pen. Code, § 1018.) Good cause is shown where the plea was entered as a result of mistake, ignorance, inadvertence, or overreaching. (*People v. Urfer* (1979) 94 Cal.App.3d 887, 892.) In *People v. McCrory* (1871) 41 Cal. 458, 462, the California Supreme Court stated "when there is reason to believe that the plea has been entered through inadvertence, and without due deliberation . . . the Court should be indulgent in permitting the plea to be withdrawn." However, the Supreme Court also noted, a "party should not be allowed to trifle with the Court by deliberately entering a plea of 'guilty' one day and capriciously withdrawing it the next" (*ibid.*) and concluded that the decision to allow withdrawal of a guilty plea rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion is clearly demonstrated. (*Ibid.*) We are required to accept all factual findings of the trial court that are supported by substantial evidence. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Here, Valadez cannot demonstrate the court abused its discretion in denying his request to withdraw his guilty plea. The record shows that he gave clear and appropriate answers to the court's questions at the guilty plea hearing. His attorney testified that Valadez understood what was going on and did not appear impaired. The court, who

8

observed Valadez during the proceeding, also perceived no impairment during the plea colloquy.

The plea agreement itself supports the fact that Valadez knew what he was doing. Based on the charges and the three prior strike allegations, he faced multiple 25-year-to-life terms. In exchange for the plea agreement, his prison term was reduced to eight years.

The only evidence in support of his motion to withdraw his plea agreement was his own self-serving testimony. That evidence was insufficient to warrant a withdrawal of his plea agreement. (*People v. Cruz* (1974) 12 Cal.3d 562, 566-567 [fact defendant alleged he was confused insufficient to warrant withdrawal of plea].)

In sum, the court did not abuse its discretion in denying Valadez's motion to withdraw his guilty plea.

Valadez asserts that this matter should be remanded for a further evidentiary hearing so he can provide expert testimony concerning the effects of the drugs he claims he was taking at the time he pleaded guilty. This contention is unavailing.

The hearing was continued several times from October 2012 to February 2013. If counsel believed expert testimony was necessary, there was ample time to obtain it. It was only after the court indicated that it was inclined to deny the motion that the request to present expert testimony was made. The court properly denied the request as both untimely and unnecessary.

Moreover, as we have discussed, *ante*, the evidence demonstrates that Valadez was not too confused to know what was going on at the change-of-plea hearing. During the plea colloquy, he was clear, lucid, and engaged.

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.